J. PATRICK GLYNN
Director
BRIDGET BAILEY LIPSCOMB
Assistant Director
HAROON ANWAR (IN Bar No. 29135-53)
Trial Attorney
ROSEMARY C. YOGIAVEETIL (N.Y. Bar No. 5296264)
Trial Attorney
Civil Division, Torts Branch
Environmental Tort Litigation Section
P.O. Box 340
Washington, D.C. 20044
Telephone: (202) 532-0222
Facsimile: (202) 616-4473
E-mail: Haroon.Anwar@usdoj.gov
        Rosemary.C.Yogiaveetil@usdoj.gov

*Attorneys for Defendant United States of America*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| ROBERT ANDERSON, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Case No. 2:21-cv-09102-VAP-PD <br><br> **DEFENDANT UNITED STATES OF AMERICA'S NOTICE OF MOTION TO DISMISS & MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** <br><br> Motion Hearing: <br> August 1, 2022 at 2 pm <br> Honorable Virginia A. Phillips |

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ............................................................ i-v

NOTICE OF MOTION AND MOTION ................................................... 1

RELIEF SOUGHT ...................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT ................. 1

   INTRODUCTION ................................................................... 1

   FACTUAL BACKGROUND........................................................3

   I.    Former George Air Force Base ...............................................3

   II.   Plaintiffs' FTCA Action ........................................................4

   ARGUMENT ........................................................................5

   I.    This Lawsuit Should Be Dismissed under FRCP 12(b)(1) for Lack of
       Subject-Matter Jurisdiction. ................................................5

       A. Plaintiffs Bear the Burden of Proving that Subject-Matter Jurisdiction
          Exists. ....................................................................5

       B. This Court Lacks Subject-Matter Jurisdiction Because Plaintiffs'
          Claims Are Barred by the FTCA's Discretionary Function Exception.
          ..............................................................................7

         i.  Plaintiffs' Claims Challenge Discretionary Governmental Conduct
            that is Susceptible to Policy Analysis. .............................7

         ii.  The Discretionary Function Exception's First Criterion is Satisfied
            Because Plaintiffs Fail to Allege a Violation of a Specific and
            Mandatory Federal Requirement Regarding Toxic, Hazardous, or
            Radioactive Waste at GAFB. .......................................8

         iii.  The Discretionary Function Exception's Second Criterion Is
            Satisfied Because Plaintiffs Fail to Rebut the Presumption that the

Challenged Governmental Conduct Is Grounded in Policy
Considerations. ..................................................................12

C. This Court Lacks Subject-Matter Jurisdiction over the Claims of
Plaintiffs F.V. and M.V. under the Feres Doctrine, as Their Alleged
Injuries Are Incident to Their Father's Military Service. .................16

II.    This Lawsuit Should Be Dismissed under FRCP 12(b)(6) for Failure to
Comply with Federal Pleading Standards. ............................. 20

A. FRCP 12(b)(6) Requires Plaintiffs to Plead Facts Sufficiently Specific
to Allege a Claim Plausible on its Face. ........................... 20

B. The SAC Lacks the Factual Support Necessary to State a Claim for
Any Individual Plaintiff.    ................................................ 21

III.   Plaintiffs' SAC Should Be Dismissed with Prejudice and Without Leave
to Amend. ................................................................ 24

CONCLUSION.............................................................. 25

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*In re "Agent Orange" Prod. Liab. Litig.* ("Agent Orange II"),
   818 F.2d 201 (2d Cir. 1987) ........................................................ 19, 20

*Aragon v. United States*,
   146 F.3d 819 (10th Cir. 1998) ...................................................... 11, 15

*Ard v. F.D.I.C.*,
   770 F. Supp. 2d 1029 (C.D. Cal. 2011) ........................................... 9

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ................................................................. 21, 24

*Barahona v. Union Pac. R.R.*,
   881 F. 3d 1122 (9th Cir. 2018) ...................................................... 24

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................. 20, 21, 24

*Berkovitz v. United States*,
   486 U.S. 531 (1988) ...................................................................... 7, 8

*Bon v. United States*,
   802 F.2d 1092 (9th Cir. 1986) ...................................................... 17

*In re Camp Lejeune N. Carolina Water Contamination Litig.*,
   263 F. Supp. 3d 1318 (N.D. Ga. 2016), *aff'd*, 774 F. App'x 564 (11th Cir. 2019)
   ..................................................................................................... 11, 15

*Carl's Jr. Rest. LLC v. 6Points Food Serv. Ltd*, 15-CV-9827,
   2016 WL 8849026 (C.D. Cal. Jan. 8, 2016) ................................... 6

*Carlyle v. United States*,
   674 F.2d 554 (6th Cir.1982) ......................................................... 8

*City of Lincoln v. United States*,
   283 F. Supp. 3d 891 (E.D. Cal. 2017) ........................................... 11, 14

*In re Consol. U.S. Atmospheric Testing Litig.*,
   820 F.2d 982 (9th Cir. 1987) ........................................................ 11, 14

*Costo v. United States*,
    248 F.3d 863 (9th Cir. 2001) ........................................................ 17

*Curten v. Recontrust Co.,* 12-CV-9565,
    2013 WL 12081084 (C.D. Cal. Jan. 23, 2013) ............................... 24

*Del Toro v. 360 P'Ship LP,* 21-CV-1216,
    2021 WL 5050057 (C.D. Cal. Nov. 1, 2021) .................................. 24

*Dichter-Mad Fam. Partners, LLP v. United States*,
    707 F. Supp. 2d 1016 (C.D. Cal. 2010), *aff'd* 709 F.3d 749 (9th Cir. 2013)
    .................................................................................... 9, 12-13

*Doe v. Holy See*,
    557 F.3d 1066 (9th Cir. 2009)...................................................... 8, 9

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    546 F.3d 981 (9th Cir. 2008) ....................................................... 5, 6

*Esteghlalian v. Dep't of the Navy,* 19-CV-01808,
    2020 WL 3250611 (S.D. Cal. Jun. 16, 2020) ................................ 24

*Feres v. United States*,
    340 U.S. 135 (1950) ................................................ 2, 7, 16-20, 25

*Gaspard v. United States*,
    713 F.2d 1097 (5th Cir. 1983) ..................................................... 19

*Ghazarian v. Republic of Turkey,* 19-CV-4664,
    2021 WL 5934471 (C.D. Cal. 2021) ............................................. 9

*Hinkie v. United States*,
    715 F.2d 96 (3rd Cir. 1983) ......................................................... 19

*Horton v. United States,* 13-CV-947,
    2014 WL 2780271 (D.S.C. June 19, 2014) ....................... 11-12, 15

*J.G. v. United States,* 19-CV-623,
    2019 WL 3555183 (N.D. Cal. 2019) .............................................. 8

*J.R. by and through Rizzi v. Palos Verdes Peninsula Unified School District,* 21-CV-07656,
    2021 WL 4553056 (C.D. Cal. Oct. 5, 2021) ................................... 6

*Kennewick Irr. Dist. v. United States*,

880 F.2d 1018 (9th Cir. 1989) ................................................................. 7

*Kim v. United States,*
940 F.3d 484 (9th Cir. 2019) ................................................................. 7

*Kokkonen v. Guardian Life Ins. Co of Am.,*
511 U.S. 375 (1994) ......................................................................... 6

*Lombard v. United States,*
690 F.2d 215 (D.C. Cir. 1982) ............................................................ 19

*Lopez v. County of Los Angeles,* 15-CV-01745,
2015 WL 3913263 (C.D. Cal. Jun. 25, 2015) ....................................... 24

*Lorsch v. United States,* 14-CV-2202,
2015 WL 6673464 (C.D. Cal. 2015) .................................................... 12

*Loughlin v. United States,*
393 F.3d 155 (D.C. Cir. 2004) ...................................................... 11, 15

*Mendiondo v. Centinela Hosp. Med. Ctr.,*
521 F.3d 1097 (9th Cir. 2008) ............................................................ 20

*Minns v. United States,*
155 F.3d 445 (4th Cir. 1998) ............................................................. 19

*Monaco v. United States,*
661 F.2d 129 (9th Cir. 1981) ................................................... 16, 18, 19

*OSI, Inc. v. United States,*
285 F.3d 947 (11th Cir. 2002) ...................................................... 11, 15

*Persons v. United States,*
925 F.2d 292 (9th Cir. 1991) ............................................................. 19

*Plater v. United States,*
359 F. Supp. 3d 930 (C.D. Cal. 2018) ................................................. 21

*Prescott v. United States,*
973 F.2d 696 (9th Cir. 1992) .............................................................. 8

*Ritchie v. United States,*
733 F.3d 871 (9th Cir. 2013) .................................................... 16, 18, 19

*Ross v. United States,*

129 Fed. App'x. 449 (4th Cir. 2005) ........................................................... 11, 15

*Routh v. United States,*
941 F.2d 853 (9th Cir. 1991) ..................................................................... 8

*Rutman Wine Co. v. E. & J. Gallo Winery,*
829 F.2d 729 (9th Cir. 1987) ..................................................................... 24

*Safe Air for Everyone v. Meyer,*
373 F.3d 1035 (9th Cir. 2004) ................................................................... 5

*Sanchez v. United States,* 18-CV-1550,
2020 WL 1157200 (S.D. Cal. 2020) ......................................................... 9

*Savary v. United States,*
205 F.3d 1352 (9th Cir. 1999) ............................................................ 10-11, 14

*Shea Homes v. United States,*
397 F. Supp. 2d 1194 (N.D. Cal. 2005) .................................................... 11, 15

*Siofele v. Duncan,* 09-CV-2800,
2009 WL 10674359 (C.D. Cal. Sept. 14, 2009) ........................................ 5

*Starr v. Baca,*
652 F.3d 1202 (9th Cir. 2011) ................................................................... 21

*Steel Co. v. Citizens for a Better Env't,*
523 U.S. 83 (1998) ..................................................................................... 6

*Terbush v. United States,*
516 F.3d 1125 (9th Cir. 2008) ................................................................... 8

*In re Toyota Motor Corp.,*
785 F. Supp. 2d 883 (C.D. Cal. 2011) ...................................................... 20, 21

*United States v. Gaubert,*
499 U.S. 315 (1991) ...................................................................... 2, 7, 8, 13, 14

*United States v. Johnson,*
481 U.S. 681 (1987) ................................................................................... 17

*United States v. Orleans,*
425 U.S. 807 (1976) ................................................................................... 6

*United States v. Shearer,*

473 U.S. 52 (1985) ........................................................................... 17

*United States v. Varig Airlines*,
467 U.S. 797 (1984) ............................................................ 7

*United States, et al. v. San Bernardino Mountains Cmty. Dist., et al.*,
17-CV-00002, 2018 WL 5266867 (C.D. Cal. Sept. 27, 2018) .............................. 20

*Welsh v. U.S. Army,* 08-CV-3599,
2009 WL 250275 (N.D. Cal. Feb. 3, 2009) .......................................... 11, 14-15

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000) ........................................................ 5

## FEDERAL STATUTES

28 U.S.C. § 1346(b) ........................................................................ 1, 6

28 U.S.C. § 2671-2680 ....................................................................... 1

28 U.S.C. § 2674 ............................................................................ 16

28 U.S.C. § 2680 ............................................................................ 8

28 U.S.C. § 2680(a) ........................................................................ 2, 7

10 U.S.C. § 9062(a) & (c)................................................................... 13

## RULES

Fed. R. Civ. P. 8 ......................................................................... 21, 24

Fed. R. Civ. P. 12(b)(1)................................................................... 1, 5

Fed. R. Civ. P. 12(b)(6)............................................................. 1, 5, 20, 21, 23

Fed. R. Civ. P. 15 ......................................................................... 24

Fed. R. Civ. P. 56 ......................................................................... 5

## LOCAL RULES

Local Civil Rule 7-3 ..................................................................... 1, 18, 25

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on August 1, 2022, at 2:00 p.m. in the First Street Courthouse, located on the 6th Floor of 350 West 1st Street, Los Angeles, California 90012, Defendant United States of America (the "United States" or "Government") will move to dismiss this action pursuant to Fed. R. Civ. P. ("FRCP") 12(b)(1) & 12(b)(6).  The motion is based on this notice, the following memorandum of points and authorities, a reply brief, and such oral argument as the Court may permit.  This motion is made following the Conference of Counsel, pursuant to L.R. 7-3, which took place on May 24, 2022.

## RELIEF SOUGHT

Pursuant to FRCP 12(b)(1) & 12(b)(6), the United States moves the Court to dismiss this lawsuit brought by Plaintiffs under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680 ("FTCA").  This action should be dismissed with prejudice and without leave to amend because Plaintiffs (1) have not alleged facts sufficient to establish subject-matter jurisdiction, and (2) have failed to state a claim upon which relief can be granted for any individual plaintiff.[1]

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
### INTRODUCTION

Plaintiffs' Second Amended Complaint (the "SAC") groups together approximately 50 separate, personal injury claims in just 90 paragraphs of allegations.  Plaintiffs consist of former service members, their spouses, children, and/or survivors or personal representatives of deceased individuals who assert personal injury or wrongful death claims stemming from alleged exposure to "toxic, hazardous, and radioactive waste" while living at or near former George Air Force Base ("GAFB"), a former 5,000+ acre base in Victorville, California,

---

[1] In the event the Court were to decline to dismiss the action at this juncture, the United States reserves the right to seek dismissal on other grounds as appropriate based on the discovery of additional information about the claims in the case.

that was used to train pilots and bombardiers during World War II and the Cold War.  The SAC falls woefully short of meeting federal pleading standards, failing to provide the threshold factual support necessary to (1) establish subject-matter jurisdiction, and (2) state a claim upon which relief can be granted on behalf of any individual plaintiff.

Plaintiffs' SAC should be dismissed in its entirety because it fails on its face to allege facts sufficient to establish subject-matter jurisdiction.  Under the FTCA's discretionary function exception, the United States retains immunity from claims challenging discretionary governmental conduct that is susceptible to policy analysis.  28 U.S.C. § 2680(a); *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991).  Here, Plaintiffs fail to plead any claims that are not facially barred by the FTCA's discretionary function exception, identifying no Government violations of any mandatory and specific federal requirements regarding use, disposal, remediation, or warnings related to alleged toxic, hazardous, or radioactive waste at GAFB.  Likewise, Plaintiffs fail to allege any facts rebutting the presumption that the Government's actions were grounded in policy.  That is because Plaintiffs' claims necessarily challenge discretionary conduct that is susceptible to policy analysis.  Additionally, under the *Feres* doctrine, as articulated in *Feres v. United States*, 340 U.S. 135, 146 (1950), the United States retains immunity for injuries "incident" to military service.  Here, the personal injury claims of Plaintiffs F.V. and M.V. are barred by the *Feres* doctrine because they are incident to active-duty military service.

Furthermore, the SAC should be dismissed because each plaintiff fails to state a plausible claim under federal pleading standards.  As an initial matter, Plaintiffs fail to provide the necessary factual detail regarding each plaintiff's exposure claim.  Rather than identifying the specific contaminant(s) underlying each exposure claim and providing details about when, where, or how any alleged exposure took place, Plaintiffs identify dozens of substances found at GAFB

during the Air Force's environmental cleanup efforts and allege in blanket fashion exposure to undefined "toxic, hazardous, and radioactive waste" by virtue of living at or near the base.  Moreover, Plaintiffs fail to provide necessary factual detail about each plaintiff's alleged injuries.  Each plaintiff asserts a laundry list of alleged injuries but fails to provide necessary facts about when the alleged injuries were discovered or the basis for believing that any alleged injuries were caused by exposure to contaminants at GAFB.  Lastly, Plaintiffs fail to adequately identify or define the alleged wrongful conduct of the United States.  Instead, Plaintiffs assert sweeping allegations consisting primarily of unsupported, conclusory statements and a formulaic recitation of the elements for a negligence claim.  Consequently, the United States is unable to properly evaluate Plaintiffs' claims or its possible defenses.

Accordingly, Plaintiffs' SAC should be dismissed with prejudice and without leave to amend.

## FACTUAL BACKGROUND

### I.     Former George Air Force Base

GAFB is a former 5,000+ acre Air Force base located 90 miles northwest of Los Angeles in Victorville, California.  The base was originally known as Victorville Army Airfield and established in 1941 to train pilots and bombardiers during World War II.  After World War II, all flying operations were discontinued as part of a nationwide demobilization, but, following the outbreak of the Korean War in 1950, the base was reopened by the Air Force and renamed GAFB.  Over the course of four-plus decades, fighter pilots were trained in a variety of aircrafts to carry out strategic military objectives, to support tactical fighter operations, and to provide training for air crews and maintenance personnel.  GAFB also provided combat training for NATO (primarily West German) pilots, provided forces in support of the 26th North American Aerospace Defense Command (NORAD) region from 1966-1990, and provided forces in support of strike missions in

Vietnam.  GAFB was officially decommissioned and closed in 1992 at the end of the Cold War.  After its closing, much of the property was transferred to the South California Logistics Airport Authority.  Today, the property is home to a number of aviation-related businesses and a community college, which trains aircraft mechanics.[2]

While GAFB was operational, many routine aircraft maintenance tasks involved use and disposal of chemicals such as jet fuel, gasoline, paints, and solvents, and military training exercises included the use of a variety of munitions. The Air Force has dedicated significant effort and resources to ensure that any chemicals that potentially affected soil and groundwater at or near GAFB were remediated and pose no public health hazards.  The Air Force began its remediation and clean-up efforts in 1981, which include regular sampling and monitoring of soil and groundwater. These efforts remain ongoing today.  Notably, the Agency for Toxic Substances and Disease Registry (ATSDR) performed Public Health Assessments in 1998 and 2013 and confirmed that soil and groundwater at or near GAFB do not present a past, present, or future public health hazard.[3]

## II.   **Plaintiffs' FTCA Action**

Plaintiffs filed this FTCA action on November 19, 2021.  [Dkt. 1.]  After amending their Complaint once on December 10, 2021, and again, on February 16, 2022, Plaintiffs served the United States with the SAC on March 3, 2022.  [Dkts. 11, 13, 17.]

In their SAC, approximately 50 Plaintiffs, individually and, purportedly, on behalf of others, assert FTCA personal injury claims against the United States. [SAC, Dkt. 13, *passim*.]  In a single cause of action for negligence, the SAC

---

[2]  *See* Former George Air Force Base Summary & FAQs, Air Force Civil Engineer Center, *available at* https://www.afcec.af.mil/Home/BRAC/George.aspx (last accessed on June 2, 2022).

[3]  *Id.*

broadly alleges that the Air Force "failed to exercise reasonable care in that [it] failed to properly use, maintain, and dispose of the toxic, hazardous, and radioactive substances used at and deposited on former George Air Force Base" and that the Air Force failed to warn about "adverse health effects of the dangers of exposure to the toxic, hazardous, and radioactive substances in the soils, groundwater, and water supply, and related airborne release of these substances… ." [SAC, Dkt. 13, ¶¶ 82, 85-87.]

The Court approved the Parties' joint stipulation to extend the United States' responsive pleading deadline until June 2, 2022.  The United States now timely moves to dismiss Plaintiffs' SAC pursuant to FRCP 12(b)(1) & 12(b)(6).

## ARGUMENT

### I.    This Lawsuit Should Be Dismissed under FRCP 12(b)(1) for Lack of Subject-Matter Jurisdiction.

#### A. Plaintiffs Bear the Burden of Proving that Subject-Matter Jurisdiction Exists.

FRCP 12(b)(1) allows a defendant to seek dismissal of a claim or action for lack of subject-matter jurisdiction.  "A motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) may challenge jurisdiction either on the face of the pleadings or by presenting extrinsic evidence for the court's consideration."  *Siofele v. Duncan*, 09-CV-2800, 2009 WL 10674359, at *1 (C.D. Cal. Sept. 14, 2009) (citing *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).  "When an attack is facial, the court confines its inquiry to allegations in the complaint, and when factual, the court may look beyond the complaint."  *Id.* (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).  The Court may consider affidavits, declarations, or other evidence without converting the motion into a summary judgment motion under FRCP 56.  *Id.*

Plaintiffs bear the burden of proving that this action is properly in federal court.  *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d

981, 984 (9th Cir. 2008) (citing *Kokkonen v. Guardian Life Ins. Co of Am.*, 511 U.S. 375, 377 (1994)); *see also J.R. by and through Rizzi v. Palos Verdes Peninsula Unified School District*, 21-CV-07656, 2021 WL 4553056, at *1 (C.D. Cal. Oct. 5, 2021) ("A 'plaintiff bears the burden of proving' the existence of subject matter jurisdiction and 'must allege facts, not mere legal conclusions' to invoke the court's jurisdiction.") (internal citation omitted).  The Court must ensure that it has subject-matter jurisdiction at the outset before proceeding with the merits of a case.  *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95 (1998); *Carl's Jr. Rest. LLC v. 6Points Food Serv. Ltd*, 15-CV-9827, 2016 WL 8849026, at *1 (C.D. Cal. Jan. 8, 2016) ("As a court of limited jurisdiction, [] we must determine the issue of subject matter jurisdiction before reaching the merits of a case.") (internal citations omitted).  "Dismissal for lack of subject matter jurisdiction is appropriate if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d at 984-85.

Here, Plaintiffs have not alleged facts sufficient to establish subject-matter jurisdiction, and the United States has not waived sovereign immunity as to Plaintiffs' claims.  *See United States v. Orleans,* 425 U.S. 807, 814 (1976) (stating that, as the sovereign, the United States "can be sued only to the extent that it has waived its immunity" from suit).  Plaintiffs have sued the United States under the FTCA, which waives the United States' immunity for certain tort claims committed by an "employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  However, there are exceptions to this waiver of sovereign immunity, two of which apply to bar Plaintiffs' claims in this case.  Plaintiffs cannot establish subject-matter jurisdiction because (1) Plaintiffs' claims are barred by the discretionary function exception of

the FTCA, and (2) the personal injury claims of Plaintiffs F.V. and M.V. are barred by the *Feres* doctrine because they are incident to active-duty military service. Accordingly, the Court should dismiss Plaintiffs' SAC in its entirety for lack of subject-matter jurisdiction.

**B. This Court Lacks Subject-Matter Jurisdiction Because Plaintiffs' Claims Are Barred by the FTCA's Discretionary Function Exception.**

    i. <u>Plaintiffs' Claims Challenge Discretionary Governmental Conduct that is Susceptible to Policy Analysis.</u>

The discretionary function exception of the FTCA bars each plaintiff's claims in this lawsuit. 28 U.S.C. § 2680(a). The exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *Berkovitz v. United States*, 486 U.S. 531, 536 (1988) (internal quotes omitted). The basis for the discretionary function exception was Congress' desire "to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984).

Courts employ the Supreme Court's two-part test to determine whether the discretionary function exception applies to particular claims. *Kim v. United States*, 940 F.3d 484, 487 (9th Cir. 2019). First, for the exception to apply, the alleged conduct must not have been subject to a federal statute, regulation, or policy that prescribes a specific course of action for a government employee to follow. *See Gaubert*, 499 U.S. at 322; *Berkovitz*, 486 U.S. at 536; *Kennewick Irr. Dist. v. United States,* 880 F.2d 1018, 1027 (9th Cir. 1989) (stressing that the applicable rule or policy must be both mandatory and specific to defeat part one of the test). Second, assuming that the government had discretion, the exception applies if the alleged negligent conduct was "susceptible" to analysis involving social,

economic, or political policy considerations.  *Gaubert*, 499 U.S. at 322-23; *Berkovitz*, 486 U.S. at 536-37.  The exception applies regardless of whether the Government was negligent.  *See Routh v. United States*, 941 F.2d 853, 855 (9th Cir. 1991).

Significantly, a plaintiff "can invoke jurisdiction only if the complaint is facially outside the exceptions of [28 U.S.C.] § 2680" and "may not invoke federal jurisdiction by pleading matters that clearly fall within the exceptions of § 2680." *Prescott v. United States*, 973 F.2d 696, 701 (9th Cir. 1992) (quoting *Carlyle v. United States*, 674 F.2d 554, 556 (6th Cir.1982)).  Thus, "[a]lthough the United States bears the 'ultimate burden of proving' the discretionary function exception applies, 'a plaintiff must advance a claim that is facially outside the discretionary function exception in order to survive a motion to dismiss.'" *J.G. v. United States*, 19-CV-623, 2019 WL 3555183, at *3 (N.D. Cal. 2019) (quoting *Prescott*, 973 F.2d at 702 n. 4); *see also Doe v. Holy See*, 557 F.3d 1066, 1084 (9th Cir. 2009).

As explained below, Plaintiffs have failed to advance any claim that is facially outside of the discretionary function exception in order to survive a motion to dismiss.

    ii.   <u>The Discretionary Function Exception's First Criterion is</u>
<u>Satisfied Because Plaintiffs Fail to Allege a Violation of a</u>
<u>Specific and Mandatory Federal Requirement Regarding Toxic,</u>
<u>Hazardous, or Radioactive Waste at GAFB.</u>

The "identification of a mandatory duty is a threshold requirement" to defeat the discretionary function exception.  *Terbush v. United States*, 516 F.3d 1125, 1135 (9th Cir. 2008).  A complaint must plead with specificity the federal statute, regulation, or policy containing the mandatory and specific directive that allegedly strips the United States of discretion.  Simply alleging that the United States "'did not have discretionary decision'" is not enough.  *J.G.*, 2019 WL 3555183, at *3. Likewise, "[b]road allegations regarding undefined 'policies and practices' are

insufficient under clear Ninth Circuit precedent." *Dichter-Mad Fam. Partners, LLP v. United States*, 707 F. Supp. 2d 1016, 1040 (C.D. Cal. 2010) (quoting *Doe*, 557 F.3d at 1084-85), *aff'd,* 709 F.3d 749 (9th Cir. 2013); *see also Ghazarian v. Republic of Turkey*, 19-CV-4664, 2021 WL 5934471, at *4 (C.D. Cal. 2021) (holding that allegations of mandatory directives in "legislative, executive, administrative and other official and/or unofficial acts" was insufficient).

The Ninth Circuit Court of Appeals and federal district courts in California, including the Central District of California, have repeatedly held that a complaint's failure to sufficiently plead a mandatory and specific directive satisfies the first prong of the discretionary function exception. *See, e.g.*, *Doe*, 557 F.3d at 1084 ("Yet nowhere does Doe allege the existence of a policy that is "*specific* and *mandatory*" on the Holy See. He does not state the terms of this alleged policy, or describe any documents, promulgations, or orders embodying it.") (emphasis within); *Sanchez v. United States*, 18-CV-1550, 2020 WL 1157200, at *3 (S.D. Cal. 2020) ("the first step of the test is satisfied because Sanchez fails to identify a federal statute, regulation, or policy that required specific course of action"); *Ard v. F.D.I.C.*, 770 F. Supp. 2d 1029, 1036 (C.D. Cal. 2011) ("Plaintiffs have not identified, nor can the court locate, any federal statute, regulation, or policy that applies to the conduct challenged in this action"); *Dichter-Mad*, 707 F. Supp. 2d at 102 ("What is lacking in the present Complaint, however, is any plausible allegation revealing that the SEC violated its clear, non-discretionary duties, or otherwise undertook a course of action that is not potentially susceptible to policy analysis."), *aff'd,* 709 F.3d 749 (9th Cir. 2013).

Here, Plaintiffs fail to plead any claims outside the first criterion of the discretionary function exception because they cannot point to any federal statute, regulation, or policy containing a mandatory requirement that prescribes a specific course of conduct that the United States failed to follow regarding use, disposal, remediation, or warnings related to alleged toxic, hazardous, or radioactive waste

at GAFB.  The allegations contained in Paragraph 61 of the SAC represent Plaintiffs only attempt to identify applicable non-discretionary language.  In Paragraph 61, Plaintiffs concede that Air Force Technical Order 00-110A-1 "allowed the disposal of solid radioactive waste by burial," but allege that "[t]his was ultimately reversed in 1971 by technical order 00-110N-2, which required transfer of radioactive waste to an authorized disposal site."  [SAC, Dkt. 13, ¶ 61.] Plaintiffs, however, fail to point to any actual mandatory and specific language in Air Force Technical Order 00-110N-2, and they do not allege that the Government violated that technical order.  That is because the Air Force complied with Technical Order 00-110N-2, which continued to allow the burial of radioactive waste with permission from the USAF Radioisotope Committee and left the maintenance of existing burial sites to the discretion of the Air Force.  Moreover, Air Force Technical Order 00-110N-2 is limited to disposal of radioactive waste, whereas Plaintiffs' claims are more broadly based on exposure to "toxic, hazardous, and radioactive waste" with the SAC identifying dozens of contaminants found during the Air Force's environmental cleanup efforts at GAFB.  [SAC, Dkt. 13, ¶ 71-79.]  Plaintiffs make no attempt in the SAC to identify a mandatory and specific requirement applicable to the other possible contaminants at issue.  They cannot because the Air Force's decisions regarding use, disposal, remediation, or warnings related to alleged toxic, hazardous, or radioactive waste at GAFB were discretionary.  As such, the first criterion of the discretionary function is satisfied.

Indeed, the Ninth Circuit and California district courts have repeatedly dismissed FTCA claims, finding that military and wartime decisions regarding use, disposal, investigation, remediation, and warnings related to alleged environmental contaminants are discretionary and satisfy the first step of the discretionary function exception.  *See*, *e.g.*, *Savary v. United States*, 205 F.3d 1352, at *3-4 (9th Cir. 1999) (holding that decisions of Army and NASA regarding waste disposal,

cleanup, safety, supervision, and warnings were discretionary in an FTCA wrongful death case stemming from alleged exposure to hazardous chemicals contaminating soil and water); *In re Consol. U.S. Atmospheric Testing Litig.*, 820 F.2d 982, 998 (9th Cir. 1987) (holding that discretionary function exception barred claims for personal injury and failure to warn arising from alleged exposure to radiation from a nuclear weapons testing program that took place during the end of WWII until 1963); *City of Lincoln v. United States*, 283 F. Supp. 3d 891, 901–03 (E.D. Cal. 2017) (holding that Air Force's decisions regarding disposal of hazardous waste from an intercontinental ballistic missile facility in the 1960s were discretionary); *Welsh v. U.S. Army,* 08-CV-3599, 2009 WL 250275, at *1 (N.D. Cal. Feb. 3, 2009) (holding that the Army had discretion in its decisions to parcel off Fort Ord property, to lease and sell the property, and on how to remediate the property); *Shea Homes v. United States,* 397 F. Supp. 2d 1194, 1200-01 (N.D. Cal. 2005) (holding that the Army Corps of Engineers' decisions on how to evaluate and address public health and environmental threats were discretionary).[4]

---

[4]   Likewise, other circuit and district courts across the country have reached the same conclusion.  *See, e.g., Ross v. United States*, 129 Fed. App'x. 449 (4th Cir. 2005) (holding that Air Force decisions regarding use, disposal, and warnings related to TCE, which allegedly was buried, permeated groundwater, and migrated to neighboring properties, were discretionary); *Loughlin v. United States,* 393 F.3d 155, 164-65 (D.C. Cir. 2004) (in a case involving chemical warfare research and testing during World War I, holding that Army's decisions regarding handling, disposal, remediation, and warnings related to buried chemical weapons were discretionary); *OSI, Inc. v. United States*, 285 F.3d 947, 952 (11th Cir. 2002) (holding that Air Force decisions regarding waste disposal from 1956 to early 1970s were discretionary); *Aragon v. United States*, 146 F.3d 819, 823–26 (10th Cir. 1998) (holding that Air Force's decisions regarding disposal of TCE-contaminated wastewater from 1942 to 1967 were discretionary); *In re Camp Lejeune N. Carolina Water Contamination Litig.,* 263 F. Supp. 3d 1318, 1343-58 (N.D. Ga. 2016), *aff'd*, 774 F. App'x 564 (11th Cir. 2019) (holding that Marine Corps' decisions regarding use, disposal, warnings related to TCE and PCE-contaminated water from the 1950s to 1980s were discretionary); *Horton v. United*

In short, the challenged conduct at GAFB was discretionary, and the first criterion of the discretionary function exception is satisfied because Plaintiffs cannot point to any mandatory federal language that prescribes a specific course of conduct that the United States failed to follow regarding use, disposal, remediation, or warnings related to alleged toxic, hazardous, or radioactive waste at GAFB.

      iii.  <u>The Discretionary Function Exception's Second Criterion Is Satisfied Because Plaintiffs Fail to Rebut the Presumption that the Challenged Governmental Conduct Is Grounded in Policy Considerations</u>.

Because the first criterion of discretionary function exception is satisfied and the challenged conduct at GAFB was discretionary, the second criterion of the discretionary function exception requires Plaintiffs to rebut the presumption that the United States' actions were grounded in policy in order to establish subject-matter jurisdiction.  However, Plaintiffs have made no such showing.

Given the important national security policies that were underlying the mission of the Air Force at GAFB, there is a strong presumption that military policy considerations underlie the government operational decisions that were made at GAFB.  *Lorsch v. United States*, 14-CV-2202, 2015 WL 6673464, at *6 (C.D. Cal. 2015) (finding that when "the very existence of the regulation[s] allows for discretion, a "strong presumption" of policy considerations is established); *Dichter-Mad*, 707 F. Supp. 2d at 1035 ("[T]he Government sets forth a number of general, broad principles governing the SEC's duties and functions. These legal assertions establish that the alleged wrongs were done in the course of the SEC's exercise of its discretion . . . Accordingly, there is 'a strong

*States*, 13-CV-947, 2014 WL 2780271, at *6 (D.S.C. June 19, 2014) (holding that Air Force's decisions in the 1940s and 1950s related to the use, disposal, and remediation of TCE or PCE, maintenance or monitoring of water systems, and public notification of contamination were discretionary).

presumption' that the alleged acts were 'based on considerations of public policy,' and Plaintiffs bear the burden of rebutting this presumption.") (quoting *Gaubert*, 499 U.S. at 323).  Department of the Air Force regulations provide for the United States Air Force "to provide an Air Force that is capable, in conjunction with the other armed forces, of-- (1) preserving the peace and security, and providing for the defense, of the United States . . . (2) supporting the national policies; (3) implementing the national objectives; and (4) overcoming any nations responsible for aggressive acts that imperil the peace and security of the United States." 10 U.S.C. § 9062(a).  In addition, the United States Air Force "shall be organized, trained, and equipped primarily for prompt and sustained offensive and defensive air operations" and "is responsible for the preparation of the air forces necessary for the effective prosecution of war . . . and, in accordance with integrated joint mobilization plans, for the expansion of the peacetime components of the Air Force to meet the needs of war."  10 U.S.C. § 9062(c).

Here, any decisions that the Air Force might have made regarding use, disposal, remediation, and warnings related to alleged toxic, hazardous, and radioactive waste at GAFB were subject to the defense, and security policies and considerations underlying the broader military mission.  These decisions were intertwined with policies and resource priorities for investigation, remediation, and notification related to mission execution.  This includes the general mission of the United States Air Force and the specific mission of the units at GAFB.  Relevant policy considerations that the military at former GAFB would have had to balance included: the need to maintain sufficient services and resources to operate the base at all times; the need to maintain military equipment for training and deployment; the prioritization of limited financial resources to meet military objectives; the monitoring of the base for any regulated substances, and overall compliance with the Department of Defense's mission.

Plaintiffs cannot rebut the strong presumption that the Air Force's decisions

regarding use, disposal, remediation, and warnings related to alleged toxic, hazardous, and radioactive waste at GAFB were grounded in policy.  To rebut such a presumption and "survive a motion to dismiss," Plaintiffs must show that "the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *Gaubert*, 499 U.S. at 324-25.  Here, Plaintiffs fail to allege any facts in the SAC demonstrating that the Air Force's decisions at GAFB were not grounded in policy, as the Air Force's decisions at GAFB necessarily implicated policy considerations.  Thus, the second criterion of the discretionary function exception is satisfied.

Indeed, the Ninth Circuit and California district courts have repeatedly dismissed FTCA claims challenging military and wartime decisions regarding use, disposal, environmental investigation, remediation, and warnings related to alleged environmental contaminants, finding the discretionary function exception to apply based on considerations of public policy. *See, e.g.*, *Savary*, 205 F.3d 1352, at *3-4 (holding that decisions of the Army and NASA regarding waste disposal, cleanup, safety, supervision, and warnings were subject to policy considerations); *In re Consol. U.S. Atmospheric Testing Litig.*, 820 F.2d at 997 ("The program required difficult judgments balancing the magnitude of the risk from radiation exposure—of which there was only fragmentary knowledge—against the risks and burdens of a public program. Those risks included the potential consequences of creating public anxiety and the health hazards inherent in the medical responses to the warning."); *City of Lincoln*, 283 F. Supp. 3d at 904 (noting that "[n]umerous courts, analyzing the military's allocation of resources involving waste management during the 1950s and '60s, have found those decisions susceptible to policy analysis" and reaching the same conclusion with respect to the disposal of hazardous waste from an intercontinental ballistic missile facility in the 1960s) (citation omitted); *Welsh*, 2009 WL 250275, at *1 (analyzing Army decisions to parcel off Fort Ord property, to lease and sell the property, and on remediation of

the property, and holding that "[t]hese kinds of judgments implicate policy choices and decisions of the type that Congress intended to protect from judicial second guessing and therefore satisfy the second prong of [discretionary function exception]."); *Shea Homes,* 397 F. Supp. 2d at 1200-01 (holding that the Army Corps of Engineers' decisions on how to evaluate and address public health and environmental hazards from remediation at former Hamilton Air Force Base property were of the kind implicating policy choices and were barred from suit by the discretionary function exception).[5]

---

[5]   Numerous other circuit and district courts have held the same.  *See*, *e.g.*, *Ross*, 129 Fed. Appx. at 452 ("[T]he procedures involved in deciding when and how much to tell plaintiffs about the TCE contamination at the Base implicate similar policy concerns to those involved in the overall cleanup. These governmental decisions are grounded in policy discretion and, as such, are shielded by the discretionary function exception to the FTCA."); *Loughlin,* 393 F.3d at 165 (holding that discretionary function exception barred warning claim because in deciding what information to release to the public about hazards detected and remediation steps, the agency had to weigh several factors, including the reliability of test results, whether further testing should be done, the significance of the hazard, and the possibility of unnecessarily alarming residents); *OSI, Inc.*, 285 F.3d at 953 (holding that "[d]isposal of waste on a military base" . . . "'involve[s] policy choices of the most basic kind,'" as "[t]he nature of the military's function requires that it be free to weigh environmental policies against security and military concerns.") (internal citation omitted); *Aragon*, 146 F.3d at 826 (where the military's use and disposal of chemicals was at issue, expressing "little doubt  . . . the Air Force's actions involved policy choices of the most basic kind" and that "[o]perational decisions . . . were subject to defense and security considerations which encompass the heart of military policy."); *In re Camp Lejeune N. Carolina Water Contamination Litig.,* 263 F. Supp. 3d at 1354 ("As *OSI* and *Aragon* make clear, the direction of resources on a military base during the Cold War is a classic illustration of the kind of balancing of national security and economic policies that should be protected by the discretionary function exception."), *aff'd*, 774 F. App'x 564 (11th Cir. 2019); *Horton*, 2014 WL 2780271, at *6 (holding that Shaw Air Force Base's "decisions concerning the use, disposal, or remediation of TCE or PCE; maintenance or monitoring of water systems; or public notification of contamination were grounded in public policy.").

In short, Plaintiffs fail to allege facts sufficient to establish that the challenged conduct at GAFB was not subject to these policy considerations. Accordingly, both criterion of the discretionary function exception are satisfied, depriving this Court of subject-matter jurisdiction over Plaintiffs' claims.

**C. This Court Lacks Subject-Matter Jurisdiction over the Claims of Plaintiffs F.V. and M.V. under the *Feres* Doctrine, as Their Alleged Injuries Are Incident to Their Father's Military Service.**

The *Feres* doctrine bars the injury claims of Plaintiffs F.V. and M.V., the children of Frank Vera III ("Vera"), as their claims are incident to Vera's military service. The FTCA provides that the United States shall be liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. This liability, however, has been limited by both statute and common law precedent. In *Feres v. United States*, the United States Supreme Court held that injuries to service members that are incident to their military service fall outside the statutory waiver of sovereign immunity in the FTCA because there is no private liability "even remotely analogous" to the liability a service member seeks to impose against the government for conduct arising out of military service. 340 U.S. 135, 141-42 (1950). *Feres* bars claims for injuries incident to military service, even in circumstances where the injuries are latent and did not manifest themselves until after the service member's discharge, as long as the exposures occurred while the service member was on active-duty. *See Monaco v. United States*, 661 F.2d 129, 132-33 (9th Cir. 1981) (holding that *Feres* precluded a service member's claim despite radiation-induced cancer not manifesting itself until after discharge). The Ninth Circuit has further recognized the "genesis test," which bars injury claims of family members when their injuries have their "genesis in injuries to members of the armed forces." *Ritchie v. United States*, 733 F.3d 871, 875 (9th Cir. 2013) (internal citation omitted).

To determine whether a plaintiff's injury claims are barred by *Feres*, the Supreme Court has encouraged the use of the "incident-to-service" test, which focuses on the totality of circumstances. *See*, *e.g.*, *United States v. Johnson*, 481 U.S. 681, 682-83 (1987); *United States v. Shearer*, 473 U.S. 52, 57 (1985). Following the Supreme Court's guidance, the Ninth Circuit has identified four, non-exclusive factors that are relevant to determining whether *Feres* bars a claim: (1) the place where the alleged negligent act occurred; (2) the plaintiff's duty status at the time of the alleged negligent act; (3) the benefits accruing to the plaintiff because of his status as a service member; and (4) the nature of the plaintiff's activities at the time of the alleged negligent act. *See Bon v. United States*, 802 F.2d 1092, 1094 (9th Cir. 1986) (internal citation omitted). In addition to weighing these four factors, however, courts in the Ninth Circuit typically examine cases that are most factually analogous to determine whether *Feres* bars the plaintiff's suit. *Costo v. United States*, 248 F.3d 863, 867 (9th Cir. 2001) ("[C]omparison of fact patterns to outcomes in cases that have applied the *Feres* doctrine is the most appropriate way to resolve *Feres* doctrine cases.") (internal citation omitted).

When applying the Ninth Circuit factors, it is clear that *Feres* would bar any injury claim brought by Vera because his alleged injuries stem from exposure to contaminants at GAFB and are incident to his active military status. Additionally, he received medical treatment through the military for his alleged injuries.[6] Presumably, the clear *Feres* bar stopped Vera from asserting any individual claims in this action, despite the SAC alleging that Vera "lived on former George Air Force Base from approximately January 1973 to May 1974 and was exposed to

---

[6]  Vera maintains a public website on which he acknowledges, not only that his alleged injuries were incident to service, but that he received treatment and benefits for his alleged injuries based on his status as a service member and, later, as a military veteran. *See* Frank Vera's GAFB Website, *available at* https://www.georgeafb.info/frank-vera/ (last accessed on June 2, 2022).

toxic contamination at former George Air Force Base that effects organs and remains in the body for many years after exposure."[7]  [SAC, Dkt. 13, ¶¶ 49-50.]

Moreover, the alleged injuries of Plaintiffs F.V. and M.V. are directly tied to Vera's *Feres* barred injuries.  Specifically, the SAC alleges that Vera "came to believe" that the alleged injuries of F.V. and M.V. "were more likely than not caused by *his* exposure to toxic contamination on former George Air Force Base." [SAC, Dkt. 13, ¶¶ 49-50 (emphasis added).]  Consequently, the alleged injuries of F.V. and M.V. have their "genesis in injuries to members of the armed forces" and thus are *Feres* barred under the genesis test.  *See Ritchie*, 733 F.3d at 875.

The Ninth Circuit barred nearly identical injury claims applying the genesis test in *Monaco*.  *See* 661 F.2d at 133-34.  *Monaco* involved claims brought by a retired service member, Daniel Monaco, and his daughter, Denise Monaco.  Denise Monaco alleged that she had suffered a birth defect due to a chromosomal change in her father, resulting from his exposure to radiation during active military service, while engaged in training exercises.  *Id.* at 133-34.  Denise Monaco argued that the *Feres* doctrine could not bar her claim, as the chromosomal change to her father was not an "injury" to him, nor was she a military service-member.  *Id.* at 133.  Upon review, the Ninth Circuit confirmed that, when applying the *Feres* doctrine, the focus is whether the allegedly negligent act that ultimately resulted in Denise Monaco's injury occurred while her father was in military service.  *Id.* Since Daniel Monaco experienced the chromosomal change incident to his military service, the Ninth Circuit determined that Denise Monaco's claims were barred under *Feres*.  *Monaco*, 661 F.2d at 133-34.  Moreover, although Denise Monaco's claims involved injuries to herself, rather than indemnity for her father's injuries, the court would still have to examine the Government's activity in relation to military personnel, "precisely [the] type of examination the *Feres* doctrine seeks to

---

[7]  During the pre-motion Conference of Counsel required by L.R. 7.3, Plaintiffs' counsel confirmed that Vera is not asserting any individual claims in this action.

avoid." *Id.* at 134; *see also Ritchie*, 733 F.3d at 875 (barring claim for death of son after pregnant servicewoman on active military duty was ordered to perform physical training in contravention to her doctor's orders); *Persons v. United States*, 925 F.2d 292, 296-97 (9th Cir. 1991) (barring claim of widow and child after serviceman committed suicide while on active military duty).

The Ninth Circuit's genesis test mirrors the logic followed by other courts when confronted with claims for genetic injuries and birth defects stemming from a service member's exposure to various chemical agents and substances. *See, e.g., Minns v. United States*, 155 F.3d 445, 449-51 (4th Cir. 1998) (barring claims by children born with serious birth defects resulting from father's exposure to toxins and pesticides given to servicemen in Persian Gulf War); *In re "Agent Orange" Prod. Liab. Litig.* ("*Agent Orange II*"), 818 F.2d 201, 203 (2d Cir. 1987) (barring claims by children resulting from father's exposure to defoliant); *Hinkie v. United States*, 715 F.2d 96, 98 (3d Cir. 1983) (barring wife's and children's genetic injury claims arising out of father's exposure to radiation); *Gaspard v. United States*, 713 F.2d 1097, 1102 (5th Cir. 1983) (barring claims related to miscarriages resulting from chromosomal damage suffered by husbands incident to service in the military); *Lombard v. United States*, 690 F.2d 215, 225 (D.C. Cir. 1982) (barring claims by children alleging injuries sustained by serviceman's exposure to radiation during atomic bomb project).

Here, Plaintiffs F.V. and M.V. claim to suffer various conditions, including birth defects and premature birth, as a direct result of their father's alleged exposure to toxic contamination at GAFB while on active military duty. [SAC, Dkt. 13, ¶¶ 49-50]. Given the standards set by the Supreme Court and the Ninth Circuit, it is clear that the *Feres* doctrine bars any individual claims by Vera, as well as the derivative claims of Plaintiffs F.V. and M.V. As in *Monaco*, but for *Feres*, the claims of Plaintiffs F.V. and M.V. would inherently require the Court to examine discretionary decisions by the Air Force regarding use, disposal,

remediation, or warnings related to alleged toxic, hazardous, or radioactive waste at GAFB and how those decisions and activities related to Vera, an active service member. 661 F.2d at 133-34; *see also Agent Orange II*, 818 F.2d at 203-04 (noting that *Feres* bars cases brought by family members where plaintiffs' allegations of wrongdoing relate directly to management of the military or involve military decisions whose nature may be considered "discretionary functions").

In light of the circumstances surrounding Vera's alleged exposure to toxic, hazardous, and radioactive waste and because the genesis of F.V.'s and M.V.'s alleged injuries in said exposure, the *Feres* doctrine bars Plaintiff F.V.'s and Plaintiff M.V.'s claims, and the Court should dismiss their claims with prejudice.

## II. This Lawsuit Should Be Dismissed under FRCP 12(b)(6) for Failure to Comply with Federal Pleading Standards.

### A. FRCP 12(b)(6) Requires Plaintiffs to Plead Facts Sufficiently Specific to Allege a Claim Plausible on its Face.

FRCP 12(b)(6) provides that where a plaintiff fails to articulate specific grounds upon which relief may be granted, a defendant may move to dismiss the allegations against it. "A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint." *United States, et al. v. San Bernardino Mountains Cmty. Dist., et al.*, 17-CV-00002, 2018 WL 5266867, at *3 (C.D. Cal. Sept. 27, 2018). Dismissal under FRCP 12(b)(6) is appropriate "where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Id*. (citing *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)). "Factual allegations must be enough to 'raise a right to relief above a speculative level.'" *Id*. (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"In resolving a Rule 12(b)(6) motion under *Twombly,* the Court must follow a two-pronged approach." *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 910 (C.D. Cal. 2011). "First, the Court must accept all well-pleaded factual allegations

as true, but '[t]hread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).  "Nor must the Court 'accept as true a legal conclusion couched as a factual allegation.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555); *see also Iqbal*, 129 S. Ct. at 1949–50.  "Second, assuming the veracity of well-pleaded factual allegations, the Court must 'determine whether they plausibly give rise to an entitlement to relief.'"  *Id.* (quoting *Iqbal*, 129 S. Ct. at 1950).  "This determination is context-specific, requiring the Court to draw on its experience and common sense; there is no plausibility 'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'"  *Id.*

Additionally, "Rule 12(b)(6) is read along with Rule 8(a), which requires a short, plain statement upon which a pleading shows entitlement to relief."  *Plater v. United States*, 359 F. Supp. 3d 930, 936 (C.D. Cal. 2018) (citing Fed. R. Civ. P. 8(a)(2)).  Specifically, Rule 8 requires a complaint to (1) "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir.  2011).

As the analysis below reveals, each plaintiff in this matter fails to meet the federal pleading standards articulated by *Twombly* and *Iqbal*.

## B. The SAC Lacks the Factual Support Necessary to State a Claim for Any Individual Plaintiff.

Plaintiffs' SAC consists of approximately 50 separate, individual personal injury claims and fails to include the factual specificity and detail required to state a plausible claim on behalf of any individual plaintiff.  The SAC includes one paragraph of allegations for each individual plaintiff, and the remainder of the SAC

primarily consists of sweeping and conclusory allegations against the United States.  Thus, the SAC is deficient in multiple respects.

As an initial matter, the SAC fails to plead the necessary factual support regarding each plaintiff's exposure claim.  Not only does each plaintiff fail to identify any specific contaminant(s) underlying the plaintiff's exposure claim, each plaintiff also fails to provide details about when, where, or how any alleged exposure took place.  Considering that nearly all of the plaintiffs in this case claim exposure to contaminants while living at GAFB, they should be able to provide basic information about where on the base the plaintiff spent time while living there, what activities the plaintiff engaged in on the base, and the specific basis for believing that he or she was exposed to contaminants while on the base.  [SAC, Dkt. 13, ¶¶ 5-55.]  Rather than providing this necessary factual detail, however, the SAC simply identifies dozens of substances found at GAFB during the Air Force's environmental cleanup efforts and asserts in blanket fashion that each plaintiff was exposed to unidentified "toxic, hazardous, and radioactive waste" by virtue of living at or near the base.  [SAC, Dkt. 13, ¶¶ 62-79.]  This is despite the fact that GAFB was a 5000+ acre base that operated during the four-plus decades between 1941 and 1992, whereas the majority of plaintiffs assert living at GAFB for only a handful of years during the 1970s and 1980s.  [SAC, Dkt. 13, ¶¶ 5-55.]  Some plaintiffs like Plaintiff Dorothy Lynn Boddy even acknowledge living at GAFB for less than a year.  [SAC, Dkt. 13, ¶ 10.]

Moreover, the SAC fails to provide the necessary factual detail regarding each plaintiff's alleged injuries.  Rather than providing facts about when each plaintiff discovered his or her alleged injuries, the SAC alleges in blanket fashion that "[s]ometime after January 2019" each plaintiff "came to believe that these injuries were more likely than not caused by exposure to toxic contamination while living on former George Air Force Base."  [SAC, Dkt. 13, ¶¶ 5-55.]  Additionally, not a single plaintiff identifies the contaminant(s) that he or she reasonably

believes caused his or her alleged injuries or the basis for believing that these alleged injuries were caused by exposure to contaminants at GAFB.  This deficiency is particularly stark because each plaintiff alleges a laundry list of claimed injuries ranging from conditions like high blood pressure, arthritis, and carpal tunnel syndrome to conditions like endometriosis, Hodgkin's lymphoma, and leukemia.  [SAC, Dkt. 13, ¶¶ 5-55.]

Lastly, Plaintiffs' negligence cause of action fails to adequately define and identify the underlying facts regarding the alleged negligent wrongful conduct of the United States.  [SAC, Dkt. 13, ¶¶ 80-90.]  Instead, the relevant allegations primarily consist of unsupported conclusory statements and a formulaic recitation of the elements for a negligence claim.  For example, Plaintiffs allege that the United States "had a duty to act with reasonable and due care for the safety of others" and "knew or should have known that its actions, omissions, and failures to act posed a threat to human health and created the dangerous condition in and around an area that was frequented by the civilian residents, visitors, and workers on and around former George Air Force Base." [SAC, Dkt. 13, ¶¶ 82, 84.]  However, Plaintiffs fail to point to any specific negligent conduct or provide any factual detail about the alleged governmental conduct constituting "specific actions, omissions, or failure to act."  [SAC, Dkt. 13, *passim*.]  Instead, Plaintiffs rely solely on blanket allegations regarding the Air Force's use, disposal, and warnings related to undefined "toxic, hazardous, and radioactive substances" during the four-plus decades that GAFB operated between 1941 and 1992, notwithstanding the actual years that any plaintiff lived at GAFB.  [SAC, Dkt. 13, ¶¶ 85-87.]  Simply put, the United States is unable to properly investigate and evaluate Plaintiffs' allegations or marshal its own defenses without receiving at least the basic identifying information required by FRCP 12(b)(6).

Because the SAC lacks the requisite factual specificity, Plaintiffs have failed to allege facially plausible claims against the United States upon which relief can

be granted.  Accordingly, Plaintiffs' SAC should be dismissed.  *See*, *e.g.*, *Esteghlalian v. Dep't of the Navy*, 19-CV-01808, 2020 WL 3250611, at \*3 (S.D. Cal. Jun. 16, 2020) ("Here, Plaintiff does not plead any facts alleging the Navy's duty of care toward Plaintiff, a breach of that duty, or proximate cause resulting in her claimed injuries. Plaintiff merely makes legal conclusions alleging the Navy is responsible for her property damage and medical issues without providing any specific facts to support these claims."); *Lopez v. County of Los Angeles*, 15-CV-01745, 2015 WL 3913263, at \*3-4 (C.D. Cal. Jun. 25, 2015) ("The complaint does not provide a coherent explanation of the basis for defendants' liability . . . Consequently, plaintiffs have failed to state a wrongful death claim under Rule 8, *Twombly*, and *Iqbal*, and the claim must be dismissed for this reason as well.").

## III. Plaintiffs' SAC Should Be Dismissed with Prejudice and Without Leave to Amend.

District courts have discretion in determining whether to allow a plaintiff the opportunity to amend the complaint.  While Rule 15 admittedly embodies a liberal amendment policy, the Ninth Circuit and Central District of California have recognized that "a Court does not need to grant leave to amend in cases where the Court determines that permitting a plaintiff to amend would be an exercise in futility." *Curten v. Recontrust Co.*, 12-CV-9565, 2013 WL 12081084, at \*2 (C.D. Cal. Jan. 23, 2013); *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile."). Amendment is futile "if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Del Toro v. 360 P'Ship LP*, 21-CV-1216, 2021 WL 5050057, at \*1 (C.D. Cal. Nov. 1, 2021) (citing *Barahona v. Union Pac. R.R.,* 881 F. 3d 1122, 1134 (9th Cir 2018)).

Here, allowing Plaintiffs to amend their SAC would be futile.  As an initial matter, Plaintiffs have already amended their complaint two times in this case, and

during the parties' L.R. 7-3 Conference of Counsel, they declined the United States' offer of attempting to fix the aforementioned deficiencies by amending the SAC.  Moreover, even if Plaintiffs were able to provide additional facts to support their exposure, personal injury, and negligence allegations, Plaintiffs cannot allege facts sufficient to establish that their claims fall outside of the discretionary function exception or the *Feres* bar for the reasons explained in Sections I.B. and I.C. above.  Accordingly, Plaintiffs' SAC should be dismissed with prejudice and without leave to amend.

## CONCLUSION

For all of the foregoing reasons, this Court should grant the United States' motion to dismiss Plaintiffs' SAC with prejudice and without leave to amend.

Dated: June 2, 2022

Respectfully submitted,

J. PATRICK GLYNN
Director, Torts Branch
BRIDGET BAILEY LIPSCOMB
Assistant Director
ROSEMARY C. YOGIAVEETIL
Trial Attorney

*/s/Haroon Anwar*
Haroon Anwar
(IN Bar No. 29135-53)
Trial Attorney

*Attorneys for Defendant*
*United States of America*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that he is an employee of the United States Department of Justice, and is a person of such age and discretion to be competent to serve papers.  The undersigned further certifies that he is causing a copy of the foregoing Notice of Motion to Dismiss and Memorandum of Points and Authorities in Support, to be served on counsel of record by the Court's Electronic Case Filing System.

I declare under penalty of perjury that the foregoing is true and correct.

Executed June 2, 2022 in Washington, DC

*/s/ Haroon Anwar*
Haroon Anwar